## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SAMUEL K COLLINS and | ) | |
| AMY P. COLLINS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 2:09-cv-00856-JEO |
| THE UNIVERSITY OF ALABAMA AT | ) | |
| BIRMINGHAM; UAB HEALTH SYSTEM | ) | |
| MANAGING BOARD; and RON GAMBLE, | ) | |
| in his individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This action was filed as a copyright infringement action pursuant to 17 U.S.C. §§ 101, *et seq*. and 28 U.S.C. § 1331.  It is presently before the court on the motion of The Board of Trustees of the University of Alabama at Birmingham ("UAB" or "the Board")[1] to dismiss the claims advanced against it (doc. 9) and the plaintiffs' motion to amend the complaint (doc. 13 ("Motion to Amend")).  The parties were afforded a full opportunity to brief the issues.  The court conducted oral argument on the motions on November 10, 2009.  Upon consideration, the court finds that the motion to dismiss the complaint is due to be granted as to UAB and the plaintiff's motion to amend is due to be granted in part and denied in part as stated below.

## I.    BACKGROUND

The initial complaint alleges that the plaintiffs contracted with UAB and the UAB Health System Managing Board ("UAB Health System") "to create individual copyrighted illustrations

---

[1]The Board notes that the plaintiffs have incorrectly named the University of Alabama at Birmingham as a party.  It further notes that the correct party is the Board of Trustees of the University of Alabama, for its division, the University of Alabama at Birmingham.  (Doc. 9 at ¶ 1).

for use in a variety of the defendants' print publications." (Coml. at ¶ 6).[2]  After purchasing

certain illustrations, the defendants purportedly republished or reused the illustrations beyond the

scope of their respective licenses.  (*Id*. at ¶ 11).  The plaintiffs' further allege that the defendants

continued to use the illustrations even after they were told that they had been reused without

permission.  (*Id*. at ¶ 13).  The plaintiffs seek compensation for the "unauthorized use of their

illustrations."  (*Id*.)

According to the complaint, the plaintiffs were told on December 26, 2007, "that the

defendants would take steps to prevent any further use of their illustrations on the defendants'

web pages and [they] would review their claims as soon as possible."  (*Id*. at ¶ 14).  The plaintiffs

later advised the defendants of additional violations and requested that the defendants take

immediate action.  (*Id*. at ¶ 15).  According to the plaintiffs, "[t]he defendants have since

acknowledged the unauthorized use of 54 ... illustrations in print publications ... as well as seven

(7) additional illustrations that were used without permission on various websites owned and

maintained by the defendants."  (*Id*. at ¶ 17).  The defendants have refused to compensate the

plaintiff for the use of the illustrations that were produced without permission or to provide

documentation justifying use of the illustrations beyond the scope of their licenses.  (*Id*. at ¶ 18).

Finally, the plaintiffs' note that the defendants, particularly defendant Ron Gamble, had prior

notice of the need to obtain the requisite permission to reuse the illustrations.  (*Id*. at ¶ 19).

The plaintiffs' first claim is for copyright infringement.  Their second claim is for

conversion under state law.

UAB filed its motion to dismiss asserting Eleventh Amendment immunity from suit on

---

[2]The complaint is located at document 1 in the electronic file.

the federal copyright claim and absolute immunity under the Alabama Constitution on the

conversion claim.  (Doc. 9).  The plaintiffs filed a response to the motion to dismiss (doc. 11)

and the defendant filed a reply thereto (doc. 12).

The plaintiffs also have filed a motion for leave to amend the complaint, including the

proposed first amended complaint with the motion.  (Doc. 13).  The amendment includes a claim

for mandamus relief and a claim of bad faith against Gamble.  The defendants then filed a

"Response to Plaintiffs' Motion for Leave to Amend Complaint."[3]  (Doc. 14).  Whereupon, the

plaintiffs filed a motion to strike the defendant's response.  (Doc. 15).  The motion to strike was

denied by the court, but the plaintiffs were afforded an opportunity to reply to the defendants'

response.  The plaintiffs have filed their reply.  (Doc. 16).  The matters are now ready for

disposition.

II.     DISCUSSION

        A.      Motion to Dismiss

                1.      Copyright claim

UAB asserts that as a state agency, the Board has Eleventh Amendment immunity from

suit on the copyright infringement claim.  (Doc. 9 at ¶ 2).  It cites *College Savings Bank v.*

*Florida Prepaid Postsecondary Expense Board*, 527 U.S. 666, 119 S. Ct. 2219, 144 L. Ed. 2d

605 (2007), in support of this contention.  The plaintiffs respond that said immunity is not

absolute as " 'Congress may abrogate the States' sovereign immunity under a valid grant of

constitutional authority.' " (Doc. 11 ("Response") at p. 1) (citing *National Assoc. of Boards of*

*Pharmacy v. Board of Regents of the University of Georgia*, 2008 WL 1804539 (M.D. Ga. April

---

[3]This motion appears to have been filed on behalf of all three defendants.

18, 2008) (quoting *Kimel v. Florida Board of Regents*, 528 U.S. 62, 73, 120 S. Ct. 631, 145 L.

Ed. 2d 522 (2000)).  They also challenge the defendant's claim of sovereign immunity asserting

that it is an affirmative defense that the movant has failed to demonstrate and that the immunity

has been abrogated by the Copyright Remedy Clarification Act ("CRCA") found at 17 U.S.C. §

511.

### a.       Burden of proof

The plaintiffs argue that because "the Eleventh Amendment is an affirmative defense, it is

the movant's obligation to prove that there was no waiver."  (Response at p. 2).  They go on to

argue that the defendant "has not met the burden of proof, yet will obviously have a second

chance to do so at summary judgment."  (*Id*.)  The defendant (UAB) does not dispute the

plaintiffs' contention that the movant has the burden in this regard.

### b.       Application of the CRCA

The plaintiffs further argue that the CRCA abrogates the defendant's Eleventh

Amendment immunity.  In pertinent part, the statute provides, "Any State, any instrumentality of

a State, and any officer or employee of a State or instrumentality of a State acting in his or her

official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the

United States or under any other doctrine of sovereign immunity, from suit in Federal court by

any person, including any governmental or nongovernmental entity, for a violation of any of the

exclusive rights of a copyright owner ...." 17 U.S.C. § 511(a).  Additionally, "the CRCA makes

available to the aggrieved party the same remedies to which he or she would be entitled under a

suit for infringement against any other party not protected by sovereign immunity, including

costs and attorney's fees."  17 U.S.C. § 511(b).  While the plaintiffs acknowledge "that the Fifth

Circuit Court of Appeals and other district courts have previously held the CRCA to be an

unconstitutional exercise of Congressional authority," (Response at p. 3 (citations omitted)), they

argue that the defendant is "unable to identify any decision from either the Eleventh Circuit

[Court of Appeals] or the United States Supreme Court that specifically addresses, much less

invalidates, the CRCA." (*Id*. at p. 4).  Furthermore, plaintiffs assert, *Florida Prepaid* was

wrongly decided and "should not be persuasive in assessing the validity of the CRCA." (*Id*.).

Instead, they argue the court should follow the dissent of Justice Stevens in that case. (*Id*.)

There is no disagreement between the parties that Congress can abrogate a State's

sovereign immunity only if it has (1) unequivocally expressed its intent to abrogate the immunity

and (2) acted under a valid exercise of power.  *Seminole Tribe of Fla. v. Fla*., 517 U.S. 44, 55,

116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996), abrogated on other grounds.  The issue in this case is

whether Congress acted under a valid exercise of power.  Congress cannot circumvent the

Eleventh Amendment restriction on judicial power under Article III of the Constitution by the

exercise of powers under Article I.  *Seminole Tribe*, 517 U.S. at 72-73.  Congress can, however,

abrogate sovereign immunity when acting to enforce constitutional rights under section 5 of the

Fourteenth Amendment.  *Id*. at 65.  Congress's power under section 5 is remedial, not

substantive.  *City of Boerne v. Flores*, 521 U.S. 507, 519, 117 S. Ct. 2157, 138 L. Ed. 2d 624

(1997), superseded by statute on other grounds.  In determining whether, for purposes of

Congress's enforcement power under section 5 of the Fourteenth Amendment, federal legislation

is permissibly remedial or impermissibly substantive, "there must be a congruence and

proportionality between the injury to be prevented or remedied and the means adopted to that

end." *Id*. at 520.

The majority in *Florida Prepaid* held that Congress acted without authority to abrogate state sovereign immunity in the Patent and Plant Variety Protection Remedy Clarification Act ("PRA").  In so finding, the Court set forth the three aspects that must be examined to determine whether such legislation passes constitutional muster: "(1) the nature of the injury to be remedied; (2) Congress's consideration of the adequacy of state remedies to redress the injury; and (3) the coverage of the legislation." *Chavez v. Arte Publico Press*, 204 F.3d 601, 605 (5th Cir. 2000).  As noted by *Chavez*, this framework was recently reconfirmed by the Supreme Court in *Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000). *Chazez*, 204 F.3d at 605.

To the extent that the plaintiffs' counsel invites this court to reject the holding in *Florida Prepaid* in that it was wrongly decided, and follow the reasoning of Justice Stevens in the dissent, the court declines to do so.  Although *Florida Prepaid* involved the PRA and not the CRCA, this court finds the majority opinion controlling on the present issue, as have the other courts that have addressed the matter.  *See e.g.*, *Chavez*, 204 F.3d at  605; *Romero v. California Dept. of Transportation*, 2009 WL 650629 (C.D. Cal. March 12, 2009); *Mktg. Information Masters, Inc. v. Bd. of Trustees of the Cal. State Univ. Sys.*, 552 F. Supp. 2d 1088, 1094 (S.D. Cal. 2008); *National Association of Boards of Pharmacy v. Board of Regents of the University System of Georgia*, 2008 WL 1805439 (M.D. Ga. April 18, 2008); *Infomath, Inc. v. University of Arkansas*, 2007 WL 456878 (E.D. Ark. Dec. 21, 2007).

### c. Analysis

Turning to an analysis of the constitutionality of the actions of Congress in enacting the CRCA, the court will apply the three factors enumerated above.  First, with regard to the nature

of the injury to be remedied, the court finds that the underlying conduct at issue in this case is

"state infringement of copyrights" and the "'constitutional inquiry' consists of possibl[e]

unremedied, or uncompensated violations of copyrights by the state[ ].'" *Chavez*, 204 F.3d at

605. *See also* Response at p. 7. As noted by the court in *Chavez* and *Romero*, the Congressional

> ... hearings demonstrated that, at most, states were only sporadically infringing
> upon citizens' copyrights. *Id*. Furthermore, not only was there a lack of evidence
> of a significant number of wholesale takings of copyright rights by States and their
> entities, *id.*, there was also a lack of evidence of a pattern of unremedied copyright
> infringement by states. *Chavez*, 204 F.3d at 606. Indeed, as the Fifth Circuit
> noted in *Chavez*, "[r]ather than expose a current epidemic of unconstitutional
> deprivations, the testimony before Congress worried principally about the
> potential for future abuse ... and the concerns of copyright owners about that
> potential." *Id*. (internal citations omitted).

*Romero*, 2009 WL 650629 at * 4. Accordingly, this court also finds "there was not substantial

evidence of copyright infringement by the States and their instrumentalities" before Congress at

the time of passage of the Act. *Id*.

With regard to the second factor, Congress's consideration of the adequacy of state

remedies, the court finds that this factor has not been met in this case for a number of reasons.

First, with regard to Congress's consideration of this issue for purposes of the CRCA, the court

in *Chavez* noted that "Congress barely considered the availability of state remedies for

infringement."[4] *Id*. at 606. Second, to the extent that the plaintiffs argue that Congress was

---

[4]Specifically, the court stated:

.... With regard to the CRCA, one witness testified that his company's attorneys told him that state
and local courts were unavailable because only federal courts can hear copyright infringement cases. *See*
House Hearings, at 51 (statement of James Healy, Vice President of Enterprise Media). In addition, the
Copyright Office provided a survey of state waivers of Eleventh Amendment immunity as an appendix to its
report. *See* Congressional Research Service, *Waiver of Eleventh Amendment Immunity from Suit: State
Survey Relating to Copyright Infringement Claims* (1988) (Appendix C to the Copyright Office Report).
These are the only two allusions to state remedies in the legislative history. While Congress referred briefly
to the Copyright Office's report in the House Report on the bill, Appendix C was mentioned neither in the
House Report nor in any of the congressional hearings. Furthermore, as pointed out in a statement submitted
to Congress, the survey failed to include information on state remedies for the unlawful taking of private

authorized to act under the CRCA in this instance because the plaintiffs otherwise would have no

state law claims in view of the absolute immunity enjoyed by the defendant under state law, the

court disagrees.  As noted by the plaintiffs, State immunity does not obviate their ability to

pursue a remedy at the Alabama Board of Adjustment.  However, they argue such a remedy is

inadequate in this instance.  (Response at p. 8).  Specifically, they state that the Board

> typically entertains simple personal injury and property damage claims resulting
> from the negligent acts of state agencies and/or employees for which damages are
> fairly easy to ascertain.  Furthermore, the Board of Adjustment, which is
> comprised of the director of finance, the state treasurer, the secretary of state and
> state auditor, has an inherent interest in minimizing the impact of any award of
> damages that could be charged against the legislative appropriation that (often
> inadequately) funds the Board.  However, the opportunity to present the Plaintiff's
> claims of infringement before this Honorable Court and a jury would better allow
> this Court to ascertian [sic] the amount of damages, if any, to which the plaintiffs
> are entitled.  As such, the CRCA provides the only avenue by which the Plaintiffs
> due process rights can be protected.  Otherwise the Plaintiffs are left without an
> inadequate [sic] remedy.

(Response at p. 9).  The defendant retorts that besides the fact that Congress failed to consider all

available state remedies (*e.g.*, breach of contract or state remedies for the unlawful taking of

---

property by the state government.  See The Copyright Remedy Clarification Act: Hearing Before the
Subcomm. on Patents, Copyrights and Trademarks of the Senate Comm. on the Judiciary, 101st Cong. 123
(1989) [hereinafter Senate Hearing] (statement on behalf of the Educators' Ad Hoc Committee on Copyright
Law).  As noted in *Chavez II*, there are other possible remedies in state courts-breach of contract claims, for
example-that Congress also never considered.FN8

> FN8. Instead of considering the adequacy of possible state remedies, Congress focused
> on the adequacy of injunctive relief, stating that injunctive relief was not adequate
> protection for copyright owners.  See H.R. Rep, at 8.

> As if to emphasize its lack of interest in state remedies, Congress rejected the idea of granting state
> courts concurrent jurisdiction over copyright cases, an alternative solution that would have avoided any
> Eleventh Amendment problems.  Congress rejected this solution not because it was an inadequate remedy,
> but because Congress believed concurrent jurisdiction would undermine the uniformity of copyright law.  *See*
> H.R. Rep., at 9.  Although uniformity is undoubtedly an important goal, "that is a factor which belongs to the
> Article I patent-power calculus, rather than to any determination of whether a state plea of sovereign
> immunity deprives a patentee of property without due process of law."  *Florida Prepaid*, 119 S.Ct. at 2209.
> The same is true here.

*Chavez*, 204 F.3d at 606-07.

private property by the state government), the State of Alabama has provided an adequate remedy in the Board of Adjustment, as created by ALABAMA CODE § 41-9-60 to 74 (1975). (Reply at p. 5). The defendant goes on to note that the Board is an exclusive remedy for all claims against the State and "recognizes a moral obligation to provide a remedy where no legal obligation exists." (*Id*. (citing *Hawkins v. State Board of Adjustment*, 7 So. 2d 775 (1942)).

The court does not find the plaintiffs' assertions on this factor convincing. To the extent this court must review the specific, available state remedies, the plaintiffs' conclusory arguments and statements that the Board is inadequate or "inherently biased" are not persuasive.

Finally, regarding the coverage of the legislation, the court in *Chavez*, stated that the CRCA's "'indiscriminate scope' cannot be reconciled with the principle that legislation pursuant to the due process clause of the Fourteenth Amendment must be proportionate to legitimate section 5 ends." *Chavez*, 204 F.3d at 607. The plaintiffs counter that "public policy supports a finding that the CRCA is a valid exercise of Congress' power under Section 5... " in their case because the business dealings between the plaintiffs and the defendant were not associated with any legitimate state function. (Response at p. 10). The defendant retorts that the failure of the Act to limit its application (*e.g.*, to intentional constitutional violations) demonstrates it is overly broad and an invalid exercise of Congress' § 5 powers. (Reply at p. 7). The court finds the reasoning in *Chavez* persuasive. The Act is broad and sweeping in its application without any attempt at reasonable limitation.

In sum, the undersigned concludes that Congress's attempt to abrogate the Eleventh Amendment by enacting the CRCA was invalid. Accordingly, the motion to dismiss is due to be granted as to the copyright claim against UAB.

### 2.     State Law Conversion Claim

The defendant next asserts that the conversion claim is due to be dismissed due to the defendant's immunity under Article I, § 14 of the Alabama Constitution.  (Doc. 9 at ¶ 4).  As noted by the defendant, "[u]nder Article I, § 14, 'the state and its agencies have absolute immunity from suit in any court.'"  (Doc. 9 at ¶ 4 (citing *Alabama State Docks v. Saxon*, 631 So. 2d 943, 945-46 (Ala. 1994)).  The plaintiffs have offered no opposition to this portion of the plaintiffs' brief.  Accordingly, the motion is due to be granted as to UAB on this claim.[5]

### B.     Motion to Amend

In the motion to amend the complaint, the plaintiffs desire to add claims for "mandamus relief," seeking "to compel state agencies and/or officials to perform legal duties and/or ministerial acts" and for bad faith.  (Mot. to Amend at ¶¶ 4-6).[6]  The motion is opposed by the defendants.  (Doc. 14).  They assert (1) they are immune under the state constitution as to these claims, (2) the plaintiffs have not named the appropriate party concerning their mandamus claim, (3) the plaintiffs have not established that the payment for the disputed uses of the illustrations is a ministerial act or a legal duty, (4) the claim for attorney's fees is barred by sovereign immunity, and (5) Alabama does not recognize a cause of action for bad faith in this instance.  (Doc. 14).

The Eleventh Circuit Court of Appeals has recently stated:

> Federal Rule of Civil Procedure 15(a) states that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a).  For purposes of this Rule, a motion to dismiss is not a responsive pleading. *Chilivis v. SEC*, 673 F.2d 1205, 1209 (11th

---

[5]To the extent that the plaintiffs asserted at the hearing on the motions that the first claim (copyright claim) includes a claim for Alabama common law copyright violations, the court finds that said claim would be precluded as relates to UAB for the reasons stated in this section dealing with state law claims.

[6]Included with the motion is the First Amended Complaint (doc. 13-3 ("First Amended Complaint")).

10

Cir. 1982).  If the case has more than one defendant, and not all have filed responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer.  *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000).

*Williams v. Board of Regents of the University System Georgia*, 477 F.3d 1282, 1291 (11th Cir. 2007).  *See generally Smith v. School Bd. of Orange County*, 487 F.3d 1361, 1366 (11th Cir. 2007) ("Pursuant to Fed. R. Civ. P. 15(a), a party seeking to amend its complaint after it previously has amended the complaint, or after a responsive pleading has been filed, may amend the complaint 'only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.' Fed. R. Civ. P. 15(a).").

> Ordinarily, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962), leave to amend "should be freely given," Fed. R. Civ. P. 15(a).  Under *Foman*, however, a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.

*Hall v. United Insurance Co. of America*, 367 F.3d 1255, 1262-62 (11th Cir. 2004); *See also Mims v. Anderson*, 2009 WL 3336794, * (11th Cir. October 19, 2009) (finding the lower court acted appropriately in not allowing an amendment when it would have been futile).  In *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007), the court stated that "[l]eave to amend is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."

### 1.    Immunity

In the proposed first amended complaint, the plaintiffs assert that they are entitled to an

order compelling the defendants, UAB, UAB Health System and Gamble,[7] to compensate them

for the unauthorized use of each of the copyrighted illustrations, plus costs, interest and

attorney's fees. (Doc. 13-2 at p. 3). They premise entitlement to the same on the allegations that

the defendants have acknowledged the unauthorized use of certain illustrations and the fact that

there is a specific fee schedule for the same, making "[t]he act of payment for these uses ...

ministerial." *Id*. at ¶ 5. The defendants assert that they are immune from suit as to the

mandamus claim because the plaintiffs have not named the correct state official to the extent they

seek to compel the payment of money due and owing. (Doc. 14 at pp. 1-2).

As noted earlier, the State of Alabama and its agencies generally have absolute immunity

from suit. *See* Ala. Const. Art. I § 14; *Haley v. Barbour County*, 885 So. 2d 783, 788 (Ala. 2004)

(stating that § 14 "affords the State and its agencies an 'absolute' immunity from suit in any

court"). Section 14 also "prohibits actions against state officers in their official capacities when

those actions are, in effect, actions against the State." *Haley*, 885 So. 2d at 788. It also bars

actions for mandamus or injunctive relief against a state agency. *Ex parte Alabama Dept. of*

*Human Resources*, 999 So. 2d 891, 895 (Ala. 2008); *Ex parte Alabama Dept. of Transportation*,

978 So. 2d 17, 23 (Ala. 2007). However, "an action for an order or injunction compelling a State

official, in his or her official capacity, to perform his or her legal duties is not an action against

the State within the meaning of § 14 and, therefore, is not prohibited by § 14." *Ex parte*

*Alabama Dept. of Human Resources*, 999 So. 2d at 895 (citing *Ex parte Carter*, 395 So. 2d 65,

68 (Ala. 1980)).

---

[7]The court notes that the plaintiffs have not defined their allegations and claims by specific defendant. Oftentimes, the allegations refer to the defendant parties collectively as "the defendants." For purposes of this discussion, the court assumes the plaintiffs are referring to all three defendants.

Premised on the foregoing authorities, the court finds that to the extent that the plaintiffs seek to add a mandamus claim against UAB, the motion is due to be denied as futile because it (UAB) is protected by State immunity. The motion, however, is due to be granted as to UAB Health System because it is not a State agency, but a charitable organization. Although Gamble is a State agent, he may be sued in his individual and official capacity to the extent that the plaintiffs seek mandamus relief to compel him to perform a legal duty.[8]

### 2.    Lack of an appropriate party

The defendants next assert that the plaintiffs have not named the appropriate party in their petition for a writ of mandamus. (Doc. 14 at p. 2). More specifically, they assert that the plaintiffs have not named the appropriate official. (*Id*.) According to the defendants, Gamble "is not (and has never been) responsible for the act of payment to Plaintiffs. Therefore, Plaintiffs' request to add a petition for writ of mandamus is misdirected." (*Id*.).

The court is not empowered on a motion to dismiss to reach the conclusion advanced by the defendants. The defendants may be legally and factually correct, however, that issue remains for a later date as concerns defendant Gamble. The motion, therefore, is due to be granted as it pertains to Gamble.

### 3.    Ministerial act or a legal duty

#### a.    Ministerial act

The defendants next assert that the plaintiffs have failed to establish the existence of a ministerial duty to pay. (Doc. 14 at p. 3). Specifically, they state that the plaintiffs "do not claim that they had a contract with Defendants upon which services were provided and payment was

---

[8]In so finding, the court is simply determining that this claim is not subject to dismissal to the extent it names Gamble.

not made." (*Id*.)  They also assert that they have paid for each illustration received.  (*Id*.)  To the

extent a reuse schedule exists, they assert that the schedule did not exist until September 2007,

and its existence "does not make payment for prior reuses a ministerial act." (*Id*.)  In support of

this latter contention, they cite various cases where the courts have held that if the plaintiff

demonstrates the existence of a contract, fee schedule, performance, acceptance and nonpayment,

a mandamus action is appropriate.  *See Dampier v. Pegues*, 362 So. 2d 224 (Ala. 1978) (noting

that a court may issue of a writ of mandamus to compel state officials to pay sums of money due

under executed contracts); *Hardin v. Fullilove Excavating Co*., *Inc*., 353 So. 2d 779, 784 (Ala.

1977) (when approval was given for final payment the matter was ministerial, not discretionary);

*State Board of Administration v. Roquemore*, 117 So. 757 (Ala. 1928) (the discretion to pay is

exhausted when the materials are ordered and accepted).[9]

At this juncture, the court cannot find that it would be futile to allow the mandamus claim

as a matter of law as to UAB Health System and Gamble.  Whether there was a duty to pay

before the September 2007 schedule is disputed.  Whether there were any reuses after September

2007 is also disputed.  Finally, if there have been reuses since September 2007, it is disputed

whether the defendants are correct in their assertion that a claim to the Board of Adjustment is

the correct course of action concerning UAB and Gamble.

###### b.        Acting arbitrarily and in contravention of rules and regulations

The plaintiffs also seek to amend their complaint to allege that the defendants "acted

---

[9]The plaintiffs' also note that "[t]hese cases allowing for mandamus relief based on ministerial duties involve 'judicial determinations that payment for goods and services, for which the State had contracted *and accepted*, could be compelled by mandamus.'" (Doc 14 at p. 4 (citing *Alabama Agricultural and Mechanical Univ. v. Jones*, 895 So. 2d 867, 879 (Ala. 2004) (emphasis in original).

arbitrarily and in contravention of their rules and regulations regarding payment for goods and

services" in refusing to pay.  (Doc. 14 at p. 4).  The defendants recognize that if they "have not

acted 'in accordance with the rules and regulations set by the university, their acts are arbitrary

and an action seeking to compel them to perform their legal duties will not be barred by the

sovereign immunity clause.'"  (*Id*. at pp. 4-5 (quoting *Stark v. Troy State Univ.*, 514 So. 2d 46,

50 (Ala. 1987)).  They argue, however, that the plaintiffs "do not claim that the defendants have a

legal duty to compensate them for the disputed uses, nor can they make such a claim."  (*Id*. at p.

5).  They also state that "[t]he fee schedule, submitted and allegedly approved in 2007, does not

create a duty to compensate retroactively."  (*Id*.).  Finally, they argue that

> even if Plaintiffs could prove that Defendants violated their own rules and
> regulations, this would not create a duty to compensate the Plaintiffs.  It would
> merely create a duty to follow the rules and regulations, which may not involve
> compensation for the disputed reuses.  Plaintiffs do not establish that Defendants'
> rules and regulations obligate them to provide compensation in accordance with
> Plaintiffs' fee schedule, and therefore they may not claim that the proper remedy
> is compensation in accordance with this schedule.

(*Id*. at p. 5).

Although the defendants' argument may ultimately be correct, it does not preclude the

granting of the motion to amend the complaint to the extent the plaintiffs seek to add this

language in support of their claim.  The court simply cannot say, at this juncture, that the

allegations are precluded as a matter of law.

The plaintiffs also seek to amend their complaint to allege that the defendants "'deprived

the Plaintiffs of their constitutionally protected copyright interests without just compensation

and/or due process of law.'"  (Doc. 14 at p. 5 (citing First Amended Complaint at ¶ 5)).  The

defendants oppose the amendment, arguing that the Board of Adjustment provides an adequate

remedy to satisfy due process.  (Doc. 14 at p. 5).  That again, ultimately may be correct, but it

does not preclude the court from granting the plaintiffs' motion to amend to the extent the

plaintiffs seek to add this language at this juncture, particularly as it relates to UAB Health

System and Gamble.

### 4.    The claim for attorney's fees

The plaintiffs next seek to amend their complaint to add a claim for attorney fees.  (Doc.

14 at p. 6).  The defendants retort that the claim is precluded by the sovereign immunity provided

for by § 14.  In support of this contention, they cite to *Chapman v. Gooden*, 974 So. 2d 972 (Ala.

2007) (citing *Ex parte Town of Lowndesboro*, 950 So. 2d 1203 (Ala. 2006)), for the proposition

that § 14 bars an award of attorney fees against the State.  (Doc. 14 at p. 6).  The defendants are

correct, attorney fees are precluded against UAB.  However, without more, the court cannot find

as a matter of law that attorney fees are precluded as to UAB Health System and Gamble.

Accordingly, this part of the motion to amend is due to be granted in part and denied in part.

### 5.    Bad faith claim

Lastly, the plaintiffs seek to add a bad faith claim due to Gamble's purported failure to

pay.  (First Amended Complaint at ¶¶ 6-9).  The defendants assert that such a claim is precluded

under Alabama law.  They further state that "bad faith" claims are only recognized in the

insurance context and that "the Alabama Supreme Court has consistently refused to extend the

tort of bad faith beyond the insurance contract context."  (Doc. 14 at p. 6 (citing *Williams v.

Killough*, 474 So. 2d 680 (Ala. 1985); *Dickey v. Alabama Farm Bureau Mutual Ins*., 447 So. 2d

693 (Ala. 1983); *Kennedy Electric Co*. *v. Moore-Handley, Inc*., 437 So. 2d 76 (Ala. 1983)).

Because Alabama only recognizes "bad faith" claims in the insurance contract context,

the court finds that the motion to amend is due to be denied to the extent it seeks to add a bad

faith failure to pay claim against Gamble.

**III.    CONCLUSION**

Premised on the foregoing, defendant UAB's motion to dismiss (doc. 9) is due to be

granted as to UAB and the motion to amend (doc. 13) is due to be granted in part and denied in

part.  The plaintiff will have ten days to file an amended complaint.  Accordingly, an order

consistent with this opinion will be entered contemporaneously herewith.

**DONE**, this the 13th day of November, 2009.

_John E. Ott_

**JOHN E. OTT**
United States Magistrate Judge